HEARD APRIL TERM, 1879.

CASE No. 737.

WILLIAM L. TRENHOLM, EXECUTOR, v. PETER C. GAILLARD, COUNTY TREASURER.*

1. A petition to the Circuit Court to have issues framed under act of June 9th, 1877, entitled "An act to prescribe the mode of proving bills of the bank of the state tendered for taxes, and the rules of evidence applicable thereto," dismissed—as the terms of that act, declaring that "in all proceedings by *mandamus*, or otherwise, to compel the reception of bills * * * an issue shall be framed under the direction of the judge, and * * * shall be submitted to a jury," authorized no new and specific proceeding, but were intended to regulate the framing and trial of the issues under established remedies then in common use.

2. The tender of the bills and their deposit with the clerk, was not the commencement of a legal proceeding, within the intent and meaning of this statute.

Before HUDSON, J., at Charleston, March, 1879.

This, and twelve other cases involving the same question, were brought before the Circuit Court for Charleston county, by petitions, filed after the passage of an act entitled "An act to facilitate the collection of taxes," approved December 24th, 1878; and they were all heard together.

The prayer of the petitioners was granted by the Circuit judge, by an order directing the framing and submission of the issues specified in the act of June 9th, 1877, and at the same time he filed the following opinion:

These cases came up on petitions to be admitted to have issues framed pursuant to the act of June 9th, 1877, for bills of the Bank of the State of South Carolina, tendered in payment of taxes, prior to the act of December 24th, 1878. The question involved is, whether the latter act repeals the former, and if it does repeal it, whether such repeal is constitutional. The former

*NOTE.—This case was carried by writ of error to the Supreme Court of the United States. By the decision of that court, filed March 22d, 1880, the judgment of this court was affirmed.—REPORTER.

act is entitled "An act to prescribe the mode of proving bills of the bank of the state tendered for taxes, and the rules of evidence applicable thereto;" the latter is entitled "An act to facilitate the collection of taxes."

It has been repeatedly decided that, under the act establishing the Bank of the State of South Carolina, a contract was made by the state with the holders of the bills of such bank, that the same were receivable in payment of taxes.

It was important, in view of the difficulties connected with such bills, that the act of 1877 should be passed, so as to ascertain what bills were genuine, and not affected with the prohibitions. The act was passed with a view to the taxes of that year in which it was passed, and is to be construed by that light. The act itself recognized that bills might be tendered, and its provisions were intended to guard against the reception of bills which might be open to the objections which, according to the preamble of the act, would prevent their reception.

The tender of the bills to the treasurer, and his deposit of them with the clerk, operated as a conditional payment of the taxes for which they were tendered, which would become absolute upon the verdict of a jury in favor of the plaintiffs, upon the issues prescribed in the act.

The effect of the act was, that upon the tender of the bills, and their lodgment in the office of the clerk of the court, the first step had been taken in such proceedings as the act contemplated. The person tendering had become invested with a right to have the bills so lodged received for his taxes, in the event that he had established the facts, the burden of proving which had been put upon him by the act. And the state had become invested with a right to have such bills as had not been so proved, destroyed. It must, therefore, be construed, that upon a tender being made, and the bills sealed up and lodged with the clerk, such a proceeding had been commenced as the act contemplated. And it would follow, that a proceeding having been commenced, it could not be taken away by subsequent legislation.

The act of 1878 is not inconsistent with such view, for its third section seems to provide rather an additional remedy, than

a deprivation of the former. If the tenderer did not see fit to assume the burden of proof cast on him by the act of 1877, he could come in under the third section of the act of 1878. But if he claims to come in under the act of 1877, he comes in only on assuming the burden of proof as required by that act. There is, therefore, nothing inconsistent or repugnant in the provisions of the two acts, and necessarily implying a repeal, so far as those who, having tendered under the act of 1877, and were in the process of enforcing the remedy, had availed themselves of it.

But it is clear, that since the act of 1878 there can be no tender hereafter made under the act of 1877. And the principles of this judgment refer only to such persons as tendered under the act of 1877, and prior to the passage of the act of 1878.

The prayer of the petitioners in these cases is, therefore, granted, and an order will be made directing issues to be framed, under the act of 1877, in these cases.

The defendant appealed to this court. An abstract is given of only so much of the arguments as bears upon the questions decided by the court.

*Messrs. De Saussure & Son,* for appellants.

It is necessary to consider whether a proceeding had been commenced by the tender of the bills. And to arrive at a conclusion, the act of June, 1877, must be referred to.

Read by its own language, the act clearly intimates that the mere deposit of the package with the clerk of the court, was not a proceeding instituted. Something remained to be done. And the person making the tender was to be the actor, since he was charged with the burden of proving certain facts necessary to entitle him to the benefit of the act. The county treasurer could not be the actor; indeed, Section 3 clearly points out that he was to be defendant, while Section 1 as clearly shows that the proceeding to be instituted should be " to compel the reception of the bills of the said corporation as a legal tender for taxes to the state; " it is needless to argue that the county treasurer could not institute a proceeding to compel the reception of the bills.

The act contemplates that the proceeding may be by *mandamus* or otherwise. If by *mandamus,* when would such a proceeding be regarded as instituted?

The usual practice in this country in obtaining the alternative writ, is to present to the court a formal application, variously termed a petition, relation or complaint, setting forth in detail the grounds upon which the claim for relief is based, and praying the aid of a *mandamus. High on Extra. Rem.,* §§ 450, 502. It is grounded on a suggestion by the oath of the party injured, of his own right, and the denial of justice below. 3 *Bl. Com.* 3.

If, then, the proceeding to be instituted was by *mandamus,* it is clear that until the suggestion or petition was filed, no proceeding would be instituted.

But the proceedings may have been instituted otherwise than by *mandamus.*

Agreeably to the code, such other proceedings must have been by action or special proceedings.

Sec. 2. An action is an ordinary proceeding in a court of justice, by which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offence.

Sec. 3. Every other remedy is a special proceeding.

Sec. 122. An action is commenced as to each defendant, when the summons is served on him or on a co-defendant, who is a joint contractor or otherwise united in interest with him. *Wait Pr.* 467–501.

No summons has ever been issued or served, and if it was by way of special proceeding, to wit, an application at a regular term of the Court of Common Pleas for Charleston county, to the presiding judge, to direct the framing of an issue, such application was not made until after 24th December, 1878.

But Judge Hudson places his decision upon the fact that the sealed package was in the possession of the clerk of the court, and thereby the person tendering and the state had each become invested with certain rights as to the particular contents of that package.

The requirement that the package be deposited with the clerk of the court, was merely arbitrary; any other depositary could

have been selected; the court could take no cognizance of the package, except upon proceedings instituted; the object of the sealing up and depositing in designated hands, was obvious; it was to prevent the risk of the same bills being tendered for various persons.

It is certain that the state could take no action in regard to such package, and hence, until proceedings instituted, trial had and judgment rendered that the bills were not genuine or valid, the state had no right. If the person tendering had chosen to pay the taxes in such funds as the county treasurer was authorized to receive, the package could have been reclaimed by the person who had tendered, and the state could not possibly have retained the bills so sealed up.

*Messrs. McCrady & Son* and *Miles, Walker & Bacot,* for respondents.

1. "That the tender of the bills to the treasurer, and his deposit of them with the clerk, operated as a conditional payment of the taxes for which they were tendered, which would become absolute upon the verdict of a jury in favor of the plaintiffs, upon the issues prescribed in the act."

2. Upon the tender of the bills to the treasurer, and the enclosing of said bills in a package, and the deposit of said package with the clerk, "the first step had been taken in such proceedings as the act contemplated—the person tendering had become invested with a right to have the bills so lodged received for his taxes, in the event that he established the facts, the burden of proving which had been put upon him by the act—and the state had become invested with a right to have such bills as had not been so proved, destroyed."

Although the act goes on to say that such deposit with the clerk shall "abide the decision of the court in any proceedings which may be instituted in regard to said bills," it is plain that the "proceedings" here referred to are *interlocutory* and not *original.*

The remedy provided in the act of 1877 is in the nature of a " *special proceeding,*" and not an " *action.*".

"Remedies in the courts of justice are divided into: 1st. Actions; 2d. Special proceedings." *Code*, § 1.

The law lays down a general rule for the commencement of "*actions*," to wit, by service of a summons on defendant. *Code*, § 122.

But in "*special proceedings*" there can necessarily be no *general* rule for the commencement of the same; in each case a special rule must be laid down. It will scarcely be asserted that the remedy provided by the act of 1877 is not a "special proceeding," and, if a "special proceeding," then a special rule for commencement thereof ought to be laid down, which the legislature has done.

Again, the act of 1877 directs that "An issue shall be framed," &c. (see Section 1 of act), which is analogous to what was formerly termed "feigned issues." Section 95 of the code provides for our case. See 12 *Barb.* 385, cited *Wait's An. Code, p.* 19, *note l.* It is therefore evident that no portion of the remedy provided in the act of 1877 is, in its nature, an "*action*" which must be commenced under the general rule of summons served; but being *altogether* a "special proceeding," it has a special commencement, to wit, tender of the bills; enclosure of the bills so tendered in a package; deposit of said package with the clerk, &c.

*Messrs. De Saussure & Son,* in reply.

The appellees say this is a special proceeding; and "in special proceedings there can necessarily be no general rule for the commencement of the same; in each case a special rule must be laid down." If, for argument, this proposition is conceded, yet the act of June, 1877, prescribes that the deposit of the package with the clerk is to be followed up by an act, viz., "a proceeding which *may be instituted* in regard to said bills." "In all proceedings by *mandamus*, or otherwise, to compel the reception of bills of the said corporation as a legal tender," &c. "In all proceedings by *mandamus* or otherwise under this act."

The language, therefore, clearly indicates that the person who tendered is to do an act, viz., to institute proceedings by *mandamus* or otherwise in regard to said bills to compel their reception. These provisions follow the deposit of the package, and, if they

have any meaning, definitively show that the legislature did not regard the deposit as the institution of a proceeding.

If, for argument, it is conceded that the proposition relative to feigned issues, as suggested by appellees' argument, is analogous, yet the argument fails by its own authority, since "an order" is requisite to put such machinery in motion. In these cases no order had been made; and by Section 2 of act of December, 1878, no order could be granted by any court or the judge of any court.

May 28th, 1879. The opinion of the court was delivered by

WILLARD, C. J. A fundamental question in this case is whether the act of 1877, (16 *Stat.* 302,) entitled "An act to prescribe the mode of proving bills of the bank of the state tendered for taxes, and the rules of evidence applicable thereto," gives a new and specific remedy, or is intended and applies to issues joined in the ordinary remedies. The respondent moved the Circuit Court, by petition, to have issues settled under that act. Such application is a new and independent remedy, claimed to have been allowed by the act in question, and unless such claims can be substantiated the whole jurisdiction below fails, which necessarily affects the result of the present appeal. The circumstances that led to the passage of that act are a part of the judicial history of the state, and will help to an understanding of the intent of the act. The question of the right of holders of the bills of the bank of the state to compel the county treasurers to receive such bills in payment of taxes came before the court in *State* v. *Stoll*, 2 *S. C.* 538, and was finally decided in the Supreme Court of the United States on appeal. This litigation gave rise to a great number of applications for *mandamus* throughout the state, involving a similar demand to that made in *State* v. *Stoll*, and presenting issues of fact as to whether the bills of the bank of the state, held by the various relators, were genuine and valid obligations. The difficulty that lay in the way of investigating such issues of fact led the legislature, in 1877, to pass the act in question, having in view, as its principal object, the establishment of a rule governing the burden of proof in such and similar cases.

The act directs the county treasurer to enclose all bills of the bank of the state tendered in payment of taxes by any person in a package, "sealed and signed by the party tendering the said bills, and by the treasurer to whom said tender is made." Such package is to be deposited by such treasurer with the clerk of the Court of Common Pleas of the county, who is to give duplicate certificates of such deposit, one to the party tendering and the other to such county treasurer, and directs that such package "abide the decision of the court in any proceeding which may be instituted in regard to said bills." It then declares that "in all proceedings by *mandamus,* or otherwise, to compel the reception of bills of the said corporation as a legal tender for taxes to the state, and refused, an issue shall be framed under the direction of the judge, and at a regular term of the Court of Common Pleas for the county wherein said bills are tendered, shall be submitted to a jury to inquire and determine by their verdict if the bills so tendered in payment for taxes are genuine and valid bills of the said corporation and have not been funded by the state, and since fraudulently uttered, and are the bills the payment of which is not prohibited by the constitution of the state and by the constitution of the United States. And upon the trial of said issue the burden of proof shall be upon the person tendering said bills to establish that the said bills are genuine and valid bills of the said corporation, and have not been funded by the state, and since fraudulently uttered, and that said bills are bills the payment of which is not prohibited by the constitution of the state and of the United States." The act then provides that if such bills shall be found, by the verdict of the jury, genuine and valid, that they shall then be received by the county treasurer in payment of taxes due the state. If found not to be genuine and valid the clerk of the court shall cancel such bills in the presence of the court, and file the packages of canceled bills with the record of the case in his office.

The respondent alleges that he had tendered bills of the bank of the state to the appellant, as county treasurer, for the payment of taxes due to the state, and that such bills were enclosed in a package and deposited with the clerk of the court in the manner prescribed by the act, and prayed that an issue might be

framed in accordance with the provisions of the act in question, and, finally, that further proceedings to enforce said taxes "shall await the determination of the trial of the issues provided in said act of June 9th, 1877," &c.

On motion, an order settling issues was made by the Circuit judge, from which the county treasurer has appealed. It is evident that if no such proceeding, as the act contemplated, is pending between the parties, there is no authority for the Circuit Court to proceed to try the issues framed, or any issues whatever, and in that case the whole proceeding would have to be dismissed. Two views of this question have been presented, the first being that the tender of the bills and their deposit with the clerk of the Court of Common Pleas in the manner prescribed by the act was, within the intent and meaning of the act, the commencement of a legal proceeding authorizing the framing and trial of issues of fact of the nature and with the consequences prescribed by the act in question, and, second, that the petition was, at all events, such a proceeding as the act contemplated. The first of these grounds is disposed of by the clear language of the act. The act declares that the bills so deposited shall "abide the decision of the court in any proceeding which may be instituted in regard to said bills." This contemplated the institution of some proceeding by means other than that of the making of the tender and deposit of the bills. This language would be senseless if the tender and deposit of the bills, in itself, had the effect of instituting such a proceeding. An implication creating a new and summary remedy, without a definition of its character and incidents, in a case where known and well-understood remedies exist, adequate for the purpose, if capable of being made under any circumstances, could not be made as against language so clear and explicit.

Is, then, the filing of the respondent's petition the institution of a remedy such as was contemplated by the act? If it is such a remedy, it is because the act has made it such, for, independently of the act, such a petition has no legal sanction, and can confer no jurisdiction on the Common Pleas.

The provisions of the statute in question, as to the framing of issues, are the only source from which authority to commence

such a proceeding can be claimed, if it exists. Do they warrant such an inference? These provisions are declared to be applicable to all "proceedings instituted by *mandamus,* or otherwise, to compel the reception of bills of the said corporation as a legal tender for taxes." Whether the language of the statute, the rules of construction, or the object of the statute, as defined by the circumstances under which it became a law, be considered, it is very clear that the proceedings intended by the statute were these established by law, and in common use for the same or like purposes. The object and end of the proceeding is distinctly stated, namely, "to compel the reception of the bills," &c. The petition contains no prayer that the county treasurer may be compelled to receive the bills in payment of taxes. If it had, possibly the petition might have been regarded as a suggestion for a *mandamus.* That the omission was not accidental may be inferred from the fact that the petition was filed after the passage of the act of December 21st, 1878, prohibiting the issuing of writs of *mandamus* for such purposes. *State* v. *County Treasurer,* 4 *S. C.* 520.

The only affirmative relief prayed for is in the nature of an injunction to restrain the enforcement of the taxes *pendente lite* —a remedy prohibited by law. *Gen. Stat.* 96. The theory of the petition is, that a verdict establishing the genuineness and validity of the bill is, in itself, a complete and perfect remedy, whereas the act distinctly provides that the issues framed, and the verdict taken upon them, shall be an incident merely of a remedy having for its end the compelling of the county treasurer to receive the bills in payment of the claimants' taxes. As the respondent does not ask to have his petition treated as a suggestion for *mandamus,* we need not consider the effect. of *State* v. *County Treasurer* on the question of the validity of such a demand.

The proceeding on the part of the respondent fails, therefore, to possess the character due to the proceedings in which issues may be framed and tried under the statute. Again, the words "*mandamus,* or otherwise," exclude the idea that the statute intended to give a new and specific remedy for the purposes contemplated in it. These words describe a class of remedies, and not a par-

ticular specific. remedy newly created. The leading and character--istic member of that class, selected to represent the nature and kind of remedies intended, is *mandamus*, a known remedy, and, in fact, the very remedy then generally employed for that purpose. The remedy particularly specified, according to familiar rules, characterizes the intention of the legislature so regulating the proceedings in existing remedies, and not as creating a new, and until then unknown, remedy. A *mandamus* is a regular and formal remedy, and its mention, in such a connection, excludes the idea that a summary and informal remedy was intended to be created. In a word, the object of the statute was to create a rule of proof as to existing remedies, to be applied to any known remedy that might be resorted to for the purpose contemplated, in the act, and "otherwise" was inserted to prevent parties from escaping the burden of the rule of proof by selecting some other remedy in the place of *mandamus*—such, for instance, as an action for seizing property in satisfaction of the tax after tender alleged to be duly made.

It must, therefore, be concluded that the court was without jurisdiction to proceed upon the respondent's petition, and the appeal should be sustained, and the order framing issues set aside and the petition dismissed. The appellant has not objected to the appeal on the ground that an interlocutory order in a special proceeding is not appealable, and it will not be considered.

Proceedings dismissed.

MCIVER and HASKELL, A. J.'s, concurred.